**Maureen Foley LACEY,
et al., Plaintiffs,**

v.

**UNITED STATES of America,
et al., Defendants.**

**No. 98–1760(PLF).**

United States District Court,
District of Columbia.

Nov. 12, 1999.

Neil I. Levy, Emmett H. Miller, III, Kilpatrick Stockton, Washington, DC, for plaintiffs.

Michael C. Johnson, Assistant United States Attorney, Washington, DC, for defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on defendants' motion to dismiss Counts I, II and IV of plaintiffs' amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. The defendants argue that the

Court lacks jurisdiction over plaintiffs' Privacy Act claims (Counts I and II) because the statute of limitations has run. *See* 5 U.S.C. § 552a(g)(5). They also maintain that plaintiffs have not satisfied the statutory exhaustion requirements that are a condition precedent to the filing of a Federal Tort Claims Act complaint in federal court (Count IV). *See* 28 U.S.C. § 2671 *et seq.* For the reasons set forth below, defendants' motion will be granted in part and denied in part.

## I.  FACTS

The plaintiffs, Maureen Foley–Lacey and her husband Stephen C. Lacey, lived in Warren County, New York until 1994. In 1994, the Laceys moved to Clinton County, New York, where Mrs. Lacey applied for Medicaid benefits. Sometime after Clinton County received her application, the County Department of Social Services ("DSS") began an investigation into the Laceys for possible welfare fraud. *See* Amended Complaint ¶ 8.

Plaintiffs allege that Henry Yelle of the DSS used contacts within the United States Customs Service, namely his wife, to seek the assistance of the Immigration and Naturalization Service in his investigation of the Laceys.[1] Mr. Yelle allegedly requested "private and personal information concerning [the Laceys]" from an INS agent. *See* Amended Complaint ¶ 8. The INS agent, with the assistance of a supervisor, then began gathering information and documents on the Laceys from INS records and from contacts within the Royal Canadian Mounted Police ("RCMP"). *Id.* After conducting their search, the INS officials allegedly disclosed the information and documents to Mr. Yelle and provided the information to the RCMP. *See* Amended Complaint ¶¶ 11, 12.

The Laceys were unaware of the passing of information between the INS, RCMP and the Clinton County DSS. The Laceys allege that as a result of the DSS investigation and the information generated by it, they were indicted for welfare fraud and arrested. *See* Amended Complaint ¶ 14. They were released pending trial and, for reasons that are not entirely clear from the record, they moved to Canada in October 1995. The Laceys did, however, make their whereabouts known to prosecuting officials in December 1995. *See* Amended Complaint ¶ 16. The current status of the criminal case is unclear from the record.

On May 3, 1996, the Laceys filed a complaint with the Office of the Privacy Commissioner of Canada ("OPCC") questioning whether any Canadian government institutions had disclosed personal information to the Clinton County DSS. On the same day, the Laceys filed a written complaint with the INS Office of Internal Audit regarding conduct by officials of the United States government. *See* Amended Complaint ¶ 18.[2] On May 6, 1996, the Laceys wrote another letter to the INS supplementing the complaint of May 3, 1996. This letter was followed up by a telephone conversation with Special Agent Kay Kramer in which the Laceys told Agent Kramer that they might file a lawsuit against the United States for monetary damages and injunctive relief in the event the government could not retrieve the wrongfully disclosed records.[3] On two separate occasions, Agent Kramer advised the Laceys not to sue because they lacked evidence; she allegedly also told them that waiting would allow the INS to investigate the claim. *See* Pls' Opp., Att. 1 (Declaration of Mau-

---

**1.** Both Mr. and Mrs. Lacey are Canadian citizens. Mr. Lacey has been a legal permanent resident of the United States since 1960 and Mrs. Lacey, a dual national, has been a United States citizen since 1956. *See* Amended Complaint ¶ 3.

**2.** In their complaint to the INS, the Laceys did not mention which part of the government allegedly acted unlawfully.

**3.** Plaintiffs contend that they informed Agent Kramer that they were seeking $15,000.000 in damages. *See* Pls' Opp., Att. 1 (Declaration of Maureen Foley–Lacey ¶ 13).

reen Foley–Lacey ¶¶ 12, 13). The Laceys maintain that they relied on Agent Kramer's advice and awaited the INS report. *See* Pls' Opp. at 8.

On June 11, 1996, the Laceys had a conversation with an officer of the OPCC who "informed plaintiffs that Mr. Yelle had admitted using his connection in the INS ... to get any and all information to use against the plaintiffs." Amended Complaint ¶ 17. The Laceys informed Agent Kramer of this conversation and had several other conversations with her over the course of the following year, including a February 1997 conversation in which Agent Kramer informed plaintiffs that United States Customs "had completed its investigation and would soon be forwarding its findings to Ms. Kramer." Pls' Opp. at 6 and Att. 1 (Declaration of Maureen Foley–Lacey ¶ 14).

During a telephone conversation in late April 1997, Agent Kramer informed the Laceys that INS agents in fact had committed some of the illegal actions that the Laceys alleged. *See* Pls' Opp., Att. 1 (Declaration of Maureen Foley–Lacey ¶ 14). This conversation was followed by a letter dated May 5, 1997 from Stephen W. Schenk, Assistant Director of the Internal Investigation Branch of the INS. *See* Pls' Opp., Exh. C (letter from Stephen Schenk). The letter confirmed that the Laceys' claim had been substantiated and that corrective actions would be taken, but the letter did not specify what actions would be taken or who would take those actions. *See id.*

On June 9, 1997, plaintiffs filed a Freedom of Information Act request with the INS, and the INS released some information in response. On July 15, 1998, plaintiffs filed their complaint in this case *pro se*. The Court subsequently appointed counsel for plaintiffs, and on March 15, 1999, plaintiffs filed an amended complaint naming the United States, the INS, and two John Does as defendants.

## II. DISCUSSION

As in any dispute, the facts as presented by the parties differ in some respects, but for the purposes of this motion to dismiss, plaintiffs' allegations must be accepted as true and all reasonable inferences must be drawn in their favor. *See, e.g., Stokes v. United States Postal Service,* 937 F.Supp. 11, 13–14 (D.D.C.1996). The Court has considered material outside the pleadings because this is a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Cobell v. Babbitt,* 30 F.Supp.2d 24, 47 n. 28 (D.D.C. 1998).

### A. Privacy Act Claims

The defendants moved to dismiss plaintiffs' Privacy Act claims on the ground that the two year statute of limitations governing such claims expired before plaintiffs filed suit. *See* 5 U.S.C. § 552a(g)(5). If plaintiffs have failed to satisfy the statute of limitations provision of the Privacy Act, the Court lacks subject matter jurisdiction over these claims. *See Szymanski v. United States Parole Comm'n,* 870 F.Supp. 377 (D.D.C.1994) (citing *Diliberti v. United States,* 817 F.2d 1259 (7th Cir. 1987)).

The Privacy Act provides, in relevant part:

An action to enforce any liability created under this section may be brought ... within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to [sic] establishment of the liability of the agency ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5). Because of this statutory provision, plaintiffs were required either to bring this action within

two years of the date on which they knew or should have known of the alleged violation, *or* to establish that they filed suit within two years of discovering a material and willful misrepresentation by defendants. *See Tijerina v. Walters,* 821 F.2d 789, 798 (D.C.Cir.1987); *Marin v. United States Dep't of Defense,* Civil Action No. 95–2175, 1998 WL 779101 .(D.D.C.); *Pope v. Bond,* 641 F.Supp. 489, 500 (D.D.C. 1986). The plaintiffs filed this action on July 15, 1998.

In their amended complaint, plaintiffs state that "on or about June 11, 1996, an officer of the OP[C]C orally informed plaintiffs that Mr. Yelle had admitted using his connection in the INS to get in touch with the Canadians to use the CPIC system to get any and all information to use against the plaintiffs." Amended Complaint ¶ 17. The conversation with the officer at the OPCC on June 11, 1996, normally would constitute sufficient notice to plaintiffs that the INS may have committed a violation of their privacy rights, thereby triggering the two-year statute of limitations provision of the Privacy Act. *See Diliberti v. United States,* 817 F.2d at 1263 (unsubstantiated hearsay and rumors sufficient to trigger the statute of limitations). Without more, the Court would find that the statute of limitations ran on June 11, 1998, 34 days *before* plaintiffs filed their original complaint.

In their opposition to defendants' motion, however, plaintiffs allege that over the course of the period of time during which plaintiffs and Agent Kramer were in contact—from June 11, 1996, when plaintiffs spoke with the OPCC, through May 5, 1997, when they finally received confirmation that their claim had been substantiated—Agent Kramer repeatedly advised plaintiffs not to sue. Agent Kramer told them that they lacked evidence to bring a suit, and that they should wait for the INS to finish its own investigation before bring-

ing suit. *See* Pls' Opp., Att. 1 (Declaration of Maureen Foley–Lacey ¶¶ 10–13). It was not until the end of April 1997 that Agent Kramer informed plaintiffs that their claim had been substantiated and that a letter to that effect would be coming soon from the INS. Approximately a week later, on May 5, 1997, the INS sent plaintiffs a letter stating that the investigation had substantiated plaintiffs' allegations. *See* Pls. Opp., Att. C (letter from Stephen Schenk).[4]

On these facts, it appears that the defendants made material and willful misrepresentations to plaintiffs over the course of the nearly one-year period. Misrepresentations continued up and until defendants acknowledged that there was evidence that Agent Kramer's earlier statement that plaintiffs had no evidence against the INS was inaccurate, and that there was substance to plaintiffs' allegations. According to Mrs. Lacey, defendants' misrepresentations continued until 1997, when Agent Kramer finally "informed me that as a result of the investigation ..., INS has confirmed that representatives of the INS were responsible for the illegal actions committed against me." Pls' Opp., Att. 1 (Declaration of Maureen Foley–Lacey ¶ 14). Drawing all reasonable inferences in favor of plaintiffs, as the Court must on this motion, the Court cannot conclude that there were no material and willful misrepresentations with respect to information that might be relevant to establishing the INS's liability. *See Pope v. Bond,* 641 F.Supp. at 500 (defendant materially and willfully misrepresented where plaintiff repeatedly requested and repeatedly was denied access to Federal Aviation Administration files). At the very least, Agent Kramer's representations led the Laceys to forego bringing suit for nearly a year. Accordingly, the Court concludes that the statute of limitations did not begin to run until, at the earliest, April 1997,

---

4. At most, this cursory response provided plaintiffs with notice that the INS had done something wrong, but the letter did not speci-fy what that something wrong was or what evidence it had found.

when Agent Kramer confirmed that there was substance to plaintiffs' claim of violations by the INS. Plaintiffs' Privacy Act claims therefore are not time-barred because plaintiffs filed this lawsuit on July 15, 1998, well before the April 1999 deadline. Defendants' motion to dismiss plaintiffs' Privacy Act claims will be denied.

## B. Federal Tort Claims Act Claim

The defendants argue that plaintiffs' FTCA claim should be dismissed because the plaintiffs failed to properly file an administrative complaint.[5] The FTCA requires plaintiffs to satisfy administrative exhaustion requirements by "present[ing] the claim to the appropriate Federal agency ..." before filing suit. 28 U.S.C. § 2675(a). Congress never defined the presentment requirement it imposed as a precondition to filing suit, but our court of appeals has held that Section 2675(a) "requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C.Cir.1987); *see* 28 U.S.C. § 2401(b) (tort claim against United States "forever barred" unless "presented in writing"). The rationale is as follows: "Notice of an injury will enable the agency to investigate and ascertain the strength of a claim; the sum-certain statement of damages will enable it to determine whether settlement or negotiations to that end are desirable." *GAF Corp. v. United States*, 818 F.2d at 919–20.

■ The government treated plaintiffs' letter to the INS, dated May 3, 1996, as a written statement of a claim under 28 U.S.C. § 2675(a).[6] Defendants consistently have maintained, however, that the letter failed to comply fully with the statute because it does not mention a sum-certain damages claim. Because the requirements of Section 2675(a) are a jurisdictional prerequisite to filing an action in this Court, the defendants argue that this Court has no subject matter jurisdiction. Plaintiffs maintain that they did in fact specify an amount of damages, but that they did so orally during one or more conversations between Agent Kramer and Mrs. Lacey, and that an oral specification suffices. *See* Pls' Opp., Att. 1 (Declaration of Maureen Foley–Lacey ¶ 13). The question before the Court is whether the oral presentation of the $15,000,000 claim satisfies the requisites of the statute.

While our court of appeals has held that the FTCA presentment requirement requires that the statement *describing the injury* be in writing, *see GAF Corp. v. United States*, 818 F.2d at 919, it is less clear whether the statement of the sum certain damage claim also must be in writing. *See id.* at 920. Other courts that have directly considered this issue, however, are virtually unanimous: both the description of the claim or injury *and* the amount of damages claimed must be in writing. *See Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720 (2d Cir.1998); *Molinar v. United States*, 515 F.2d 246, 248–49 (5th Cir.1975); *Bialowas v. United States*, 443 F.2d 1047, 1049–50 (3d Cir.1971); *Stokes v. U.S. Postal Service*, 937 F.Supp. 11, 14–15 (D.D.C.1996); *LeGrand v. Lincoln*, 818 F.Supp. 112 (E.D.Pa.1993). As Judge Urbina suggested in *Stokes*, "the purpose of requiring claimants to include a sum-certain amount for damages is to allow the federal agency

5. In their motion, defendants also argue that the FTCA claims should be dismissed because plaintiffs improperly sued the INS instead of the United States. As plaintiffs point out in their Opposition, however, they did in fact sue the United States in their amended complaint, as is clear both from the caption of the amended complaint and from both the caption and the text of Count IV.

6. The letter from the INS to plaintiffs, dated May 5, 1997, refers to their "complaint," which would seem to indicate that the INS deemed plaintiffs' letter a claim for purposes of the FTCA, 28 U.S.C. § 2675(a).

**18**

to 'determine whether settlement or negotiations' towards a settlement are desirable." *Stokes v. U.S. Postal Service*, 937 F.Supp. at 15 (quoting *GAF Corp. v. United States*, 818 F.2d at 920). Because plaintiffs failed to meet this requirement in their written submission, the FTCA claim must be dismissed.

An Order consistent with this Opinion will be issued this same day.

SO ORDERED.

### ORDER

Upon consideration of defendants' motion to dismiss Counts I, II and IV of plaintiffs' amended complaint, plaintiffs' opposition and defendants' reply, and for the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendants' motion is granted in part and denied in part. Defendants' motion to dismiss Count IV is GRANTED, while defendants' motion to dismiss Counts I and II is DENIED; it is

FURTHER ORDERED that Count IV of plaintiffs' amended complaint is DISMISSED; and it is

FURTHER ORDERED that counsel for the parties shall appear for a status conference on January 28, 2000 at 9:15 a.m. to discuss scheduling and the prospects for settlement.

SO ORDERED.