Byron ARMSTRONG, et al., Plaintiffs,

v.

Paul VANCE, et al., Defendants.

No. CIV.A. 01–2677(PLF).

United States District Court,
District of Columbia.

Aug. 5, 2004.

Donna Lee Wulkan, Washington, DC, for Plaintiffs.

Edward P. Taptich, Office Of Corporation Counsel, Washington, DC, for Defendants.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for consideration of defendants' motion to dismiss and plaintiffs' motion for summary judgment. Plaintiffs filed this action seeking attorneys' fees for their counsel's work at the administrative stage to enforce plaintiffs' due process rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and counsel's work in litigating plaintiffs' right

to attorneys' fees. Plaintiffs subsequently moved for summary judgment, and defendants responded with a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim under Rule 12 of the Federal Rules of Civil Procedure. Upon consideration of the parties' briefs, the Court concludes that it is appropriate to grant in part and deny in part defendants' motion to dismiss, and to deny plaintiffs' motion for summary judgment.

## I. BACKGROUND

### A. *Statutory Background*

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). As a condition of receiving funds under the Act, the IDEA requires that school districts adopt procedures to ensure appropriate educational placement of special needs students. *See* 20 U.S.C. § 1413. In addition, school districts must develop comprehensive plans for meeting the special educational needs of such students. *See* 20 U.S.C. § 1414(d)(2)(A). Known as "individualized education programs," or IEPs, these plans must include "a statement of the child's present levels of educational performance, ... a statement of measurable annual goals, [and] a statement of the special education and related services ... to be provided to the child...." 20 U.S.C. 1414(d)(1)(A).

Parents who object to their child's IEP are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). Parents "aggrieved by" a hearing officer's findings and decision may

bring a civil action in either state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). Section 1415(i)(3)(B) of the IDEA gives courts authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party," which includes the authority to award fees to a party who has prevailed in an administrative due process proceeding. *See Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C.Cir.1990) (en banc). The amount of fees awarded is based "on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

### B. *Procedural History of this Action*

In each of the 94 separate claims that are part of this action, plaintiffs requested administrative due process hearings under Section 1415(i)(3) of the IDEA as a response to defendants' alleged failure to provide plaintiffs with a free and appropriate education. *See* Plaintiffs' Motion for Summary Judgment, Statement of Material Facts Not in Genuine Dispute ("PSMF") ¶¶ 2–3. Plaintiffs assert that they prevailed at the administrative level either by receiving a favorable hearing officer determination ("HOD") or by securing a settlement agreement that provided plaintiffs the relief they had requested. *See id.* at ¶¶ 3, 5. Plaintiffs then submitted attorneys' fee requests to defendants following the conclusion of each administrative proceeding, and received partial payments of the fee requests. *See id.* ¶¶ 3–4. Specifically, defendants paid fee requests up to the amount allowed under a statutory cap in the District of Columbia appropriations law that expressly limited the amount that defendants could pay for IDEA attorneys' fees. *See id.* ¶ 13; Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, Defendants' Statement of Material Facts as to Which There Is a Genuine Issue ("DSMF") at 2. Plain-tiffs subsequently filed their complaint in this Court on December 28, 2001, claiming prevailing party status and seeking the outstanding balances on the aforementioned fee applications in light of what plaintiffs deemed as a change in the appropriations bill for fiscal year 2002 that they assert eliminated the fee cap.

During the course of the administrative proceedings but prior to plaintiffs' suit, the Supreme Court announced in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), a new rule regarding the definition of "prevailing party" in fee-shifting statutes such as the IDEA. In response to *Buckhannon*, defendant District of Columbia Public Schools ("DCPS") Director of Mediation and Compliance Paula Perelman issued a memorandum to the special education bar addressing the Supreme Court's decision. In the memorandum DCPS represented that

> effective September 1, 2001, DCPS will not pay attorneys' fees incurred in the course of executing a settlement agreement with an attorney representing a parent alleging a violation of the IDEA unless the payment of these fees is a negotiated term of the settlement agreement in question. DCPS will pay attorneys' fees attendant to settlement agreements before this date that include no language regarding attorneys' fees to the extent permitted by law. In doing so, however, DCPS admits to no liability for the payment of such fees.

Motion for Summary Judgment, Ex. 2, Memorandum of August 31, 2001 from Paula Perelman to Attorneys Who Represent Parents Who Prevail Against the D.C. Public Schools in Action Brought Under the Individuals With Disabilities Act ("Perelman Memorandum").

## II. DISCUSSION

Plaintiffs seek summary judgment on the ground that they are prevailing parties, that their fee requests are reasonable, and that the statutory cap that restricted the amount defendants could pay for attorneys' fees under the IDEA was eliminated by Congress. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."). Defendants oppose plaintiffs' motion, and have moved to dismiss plaintiffs' complaint asserting that all the requests for attorneys' fees are untimely, that the claims by plaintiffs who entered settlement agreements are barred under *Buckhannon*, and that the statutory cap still effectively applies to plaintiffs' claims. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Complaint ("Defs.' Dism. Mem.").

### A. *Statute of Limitations*

▉ Defendants argue that plaintiffs' suit is untimely because it was filed outside the applicable limitations period. A motion to dismiss for untimeliness is a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Lacey v. United States*, 74 F.Supp.2d 13, 15 (D.D.C.1999). A motion to dismiss should not be granted unless plaintiffs can demonstrate no set of facts that supports their claim entitling them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1117 (D.C.Cir.2000). In evaluating the motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiffs. *See Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C.Cir.1997). While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in

the complaint, nor must the Court accept the plaintiffs' legal conclusions. *See National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C.Cir.1996); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994).

▉ Although a district court may dispose of a motion to dismiss on the basis of the complaint alone, a court may consider materials beyond the pleadings when evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992). This Court has interpreted *Herbert* to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections and Ethics*, 104 F.Supp.2d 18, 22 (D.D.C. 2000) (Kennedy, J.) (citing *Herbert v. National Academy of Sciences*, 974 F.2d at 197), *aff'd Scolaro v. D.C. Bd. of Elections and Ethics*, No. 00–7176, 2001 WL 135857, at *1, 2001 U.S.App. LEXIS 2747, at *1 (D.C.Cir. Jan. 18, 2001); *see also Ass'n of Merger Dealers, LLC v. Tosco Corp.*, 167 F.Supp.2d 65, 69 (D.D.C.2001) (Hogan, C.J.) (same); *Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C.2001) (Urbina, J.) (same).

▉ The parties agree that for each claim the limitations period for attorneys' fees began to run on the date that plaintiffs received the partial payments from DCPS; this constituted notice to plaintiffs that defendants did not intend to pay the remaining fees requested. *See* Defs.' Dism. Mem. at 11; Plaintiffs' Opposition

to Defendants' Motion to Dismiss ("Pls.' Opp.") at 17. The Court therefore must determine only what limitations period applies in order to assess the timeliness of plaintiffs' claims. Defendants assert that the 30–day limitation period provided in Rule 15(a) of the Rules of the District of Columbia Court of Appeals applies to actions for attorneys' fees brought under Section 1415(i)(3)(B). *See* Defs.' Dism. Mem. at 9–11. Rule 15(a) provides that review of an agency decision or order must be made within 30 days after notice of the order or decision. *See* D.C. CT. APP. R. 15(a). Plaintiffs counter that the applicable period is three years, as provided by Section 12–301(8) of the District of Columbia Code, which provides a three-year limitations period for actions "for which a limitation is not otherwise specially prescribed." *See* Pls.' Opp. at 14 (quoting D.C. CODE ANN. § 12–301(8) (2001)). Upon careful consideration of the parties' briefs and the relevant case law, the Court concludes that the appropriate limitations period is three years as provided by Section 12–301(8) of the District of Columbia Code.

█ Although the precise question of which limitations period applies to suits for IDEA attorneys' fees has not come before the D.C. Circuit, the court of appeals in *Spiegler v. District of Columbia*, 866 F.2d 461 (D.C.Cir.1989), has determined the applicable limitations period for appeals of hearing officer determinations brought under the IDEA. In *Spiegler*, the court first explained that if Congress fails to establish a statute of limitations for a federal cause of action, as it has in the IDEA context, a court "may 'borrow' one from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies." *Id.* at 463–64 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). The court then considered the same two limitations period proposed by

the parties here and asked whether an appeal from a hearing officer determination was sufficiently analogous either to an administrative agency appeal or to a *de novo* civil action. *See Spiegler v. District of Columbia*, 866 F.2d at 464. The court in *Spiegler* concluded that the appeal of an HOD is more analogous to an appeal of an administrative agency decision than it is to a *de novo* civil action, in light of the quasi-appellate role the district court plays in the review of HODs, the fact that the evidence in both HOD reviews and administrative appeals primarily is the administrative record, and the deference the district court provides to the hearing officer's decision. *See id.* at 465–66. Finally, the court concluded that the shorter 30–day period for HOD reviews was not inconsistent with the federal policies underlying the IDEA, noting that the IDEA "was intended to ensure prompt resolution of disputes regarding appropriate education for handicapped children" in light of the time-sensitive nature of a child's development, and that a short limitations period furthered this policy. *Id.* at 467.

Under *Spiegler*, the Court in this case must determine whether an action for attorneys' fees is more akin to the review of an administrative agency decision, or to a *de novo* civil action under the IDEA. It is apparent to this Court that an action for attorneys' fees is more like the latter, for several reasons. First, unlike the appeal of a hearing officer decision, an action for attorneys' fees involves no direct review of an administrative decision. Instead, it concerns a fee petition request raised for the first time. Second, in reviewing a fee petition the Court considers evidence as to whether plaintiffs prevailed in the underlying proceedings, and, if so, the reasonableness of the fee request; this includes review of attorney records and affidavits, materials never brought before a hearing officer. While the Court may review the

hearing officer decision and the administrative proceedings more generally in making these determinations, any such review is wholly different from the review of the hearing officer's substantive decision. *See J.B. v. Essex–Caledonia Supervisory Union*, 943 F.Supp. 387, 390 (D.Vt.1996) ("In a fee claim action, a court makes a judgment regarding an entirely different set of factual and legal questions, considering whether and to what extent the claimant is a prevailing party" as well as the reasonableness of the time spent and the hourly rate charged). Finally, unlike the review of administrative agency decisions there is no deference provided to any hearing officer's decision for the simple reason that no such decision exists.

Each of these elements weighs in favor of applying the three-year limitations period provided for *de novo* actions in Section 301(8). *See Zipperer v. School Board of Seminole County*, 111 F.3d 847, 851 (11th Cir.1997); *B.K. v. Toms River Board of Education*, 998 F.Supp. 462, 470 (D.N.J. 1998) ("It is clear that the grounds upon which relief may be granted, the nature of the proceedings, and scope of review differ" from appeals of hearing officer determinations); *Robert D. v. Sobel*, 688 F.Supp. 861, 864 (E.D.N.Y.1988) (same). The only remaining question then is whether application of the three-year limitations period supports the policies of the IDEA.

The policies underlying a claim for IDEA attorneys' fees are different from those that underlie the appeal of substantive hearing officer decisions. *Cf. Spiegler v. District of Columbia*, 866 F.2d at 466–67. While timely disposition of attorneys' fees claims is important, there is nothing time-sensitive about deciding a petition for attorneys' fees. The imperative behind expeditious review of hearing officer decisions—the prompt finalization of educational placements in order to reduce injury to the child caused by delay in placement—is completely absent in a fee petition case. *See Zipperer v. School Board of Seminole County*, 111 F.3d at 851 ("the resolution of claims for attorneys' fees is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations") *B.K. v. Toms River Board of Education*, 998 F.Supp. at 471 ("The policy favoring quick decisions regarding the child's placement is simply inapplicable in [the attorneys' fee] context."); *Michael M. v. Board of Education of the New York City School District*, 686 F.Supp. 995, 1001–02 (E.D.N.Y.1988). Indeed, a short statute of limitations in attorneys' fees cases actually would frustrate the policy of the IDEA by making it more difficult for special needs children and their parents to get rigorous advocates to represent them. *See J.B. v. Essex–Caledonia Supervisory Union*, 943 F.Supp. at 390.

Moreover, a longer limitations period will promote greater attorney representation of parents and their children in IDEA proceedings and also will provide more time for settlement discussions with respect to attorneys' fee petitions, thereby making civil litigation over attorneys' fees less likely and conserving judicial resources. *See Kaseman v. District of Columbia*, 329 F.Supp.2d 20, 25, 2004 WL 1770634, opinion at 6–7 (D.D.C.2004) (Huvelle, J.) ("a longer limitation period . . . provides a more realistic opportunity for negotiation and settlement of fee petitions"); *B.K. v. Toms River Board of Education*, 998 F.Supp. at 471 (longer limitations period allows time for and encourages settlement). The three-year limitations period also may permit plaintiffs' counsel to file actions that include multiple fee requests; while each fee petition will be considered separately, combining them in one complaint avoids bur-

dening the Court with multiple actions. In this case, for instance, plaintiffs could have filed 94 separate actions rather than one. The Court therefore adopts the three-year limitations period provided in D.C.Code Section 12–301(8).[1] Plaintiffs' claims for attorneys' fees therefore are timely because plaintiffs filed their complaint within three years of receipt of the initial partial payments by defendants.[2]

### B. Prevailing Party Status Under Buckhannon

The Court next will address defendants' motion to dismiss under Rule 12(b)(6) on the basis of the *Buckhannon* decision. The *Buckhannon* question is whether those plaintiffs who entered into settlement agreements during the administrative proceedings are "prevailing parties" for the purpose of Section 1415(i)(3)(B) of the IDEA. Defendants move to dismiss on the ground that the settling plaintiffs do not qualify. Prior to 2001, courts applied the "catalyst" theory to determine whether a plaintiff was a "prevailing party" under fee-shifting statutes such as the IDEA. *See Smith v. Roher*, 954 F.Supp. 359, 363 (D.D.C.1997) (catalyst theory applied to IDEA fee claim); *see also Blackman v. District of Columbia*, 59 F.Supp.2d 37, 41 (D.D.C.1999) (catalyst theory applied in 42 U.S.C. § 1983 context). In 2001, however,

the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), changed the landscape for awarding attorneys' fees under fee-shifting statutes by rejecting the "catalyst" theory and adopting a more stringent definition of "prevailing party."

In *Buckhannon*, the plaintiffs operated assisted living care homes that failed an inspection by the state fire marshal because some of the residents were incapable of "self-preservation" as defined under state law. In response, the plaintiffs filed suit charging that the "self-preservation" requirement violated the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12010 *et seq. See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. at 600–01, 121 S.Ct. 1835. While the suit was pending, the state legislature enacted two bills eliminating the provisions in question, and the district court granted the defendants' subsequent motion to dismiss on the ground of mootness *See id.* at 601, 121 S.Ct. 1835. The plaintiffs then sought attorneys' fees and costs as prevailing parties under the FHAA, 42 U.S.C. § 3613(c)(2), and the

---

1. At least three other judges or magistrate judges of this Court have borrowed the three-year limitations period provided by Section 12–301(8) for IDEA attorneys' fee petitions. *See Kaseman v. District of Columbia*, 329 F.Supp.2d at 25, 2004 WL 1770634, at *7 (D.D.C.2004); *Akinseye v. District of Columbia*, 193 F.Supp.2d 134, 144–45 (D.D.C.2002) (Walton, J.), *rev'd on other grounds*, 339 F.3d 970 (D.C.Cir.2003); *Smith v. District of Columbia*, Civil Action No. 02–0373, Opinion at 6–7 (D.D.C. Sept. 19, 2002) (Kay, M.J.).

2. The Court recognizes that a split exists with respect to the appropriate limitations period for attorneys' fee actions under the IDEA. At least two circuits and several district courts

have concluded that fee petitions are ancillary to the substantive administrative review process and that the applicable period therefore is the state law limitations period provided for judicial review of administrative decisions. *See King v. Floyd County Board of Education*, 228 F.3d 622, 626 (6th Cir.2000); *Powers v. Indiana Department of Education*, 61 F.3d 552, 556 (7th Cir.1995); *Mayo v. Booker*, 56 F.Supp.2d 597, 598 (D.Md.1999); *Wagner v. Logansport Community School Corp.*, 990 F.Supp. 1099, 1102 (N.D.Ind.1997). Under this court of appeals' *Spiegler* analysis, however, the Court has concluded that these proceedings are independent rather than ancillary. *See supra* at 55.

ADA, 42 U.S.C. § 12205, arguing that under the "catalyst theory," they had "achiev[ed] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835.

The Supreme Court rejected the plaintiffs' claim, concluding that the "catalyst theory" was an impermissible basis for the award of attorneys' fees under the statute. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources.,* 532 U.S. at 610, 121 S.Ct. 1835. Rather, the Court concluded, there must be an "alteration in the legal relationship of the parties" that has been given some judicial *imprimatur* in order to qualify as a "prevailing party" under fee-shifting statutes. *Id.* at 605, 121 S.Ct. 1835. This definition includes, *inter alia,* enforceable judgments on the merits and court-ordered consent decrees because both "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Assn. v. Garland Independent School District,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Supreme Court noted that attorneys' fees normally would not be available to parties that reach private settlements because such agreements "do not entail the judicial approval and oversight involved in consent decrees." *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. at 604 n. 7, 121 S.Ct. 1835.

While the Court did not address fees in the context of the IDEA expressly, the Supreme Court indicated that its reasoning applied to analogous fee-shifting statutes. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. at 603 n. 4, 121 S.Ct. 1835 (Court interprets fee-shifting statutes such as the FHAA,

the ADA, the Voting Rights Act and the Civil Rights Attorney's Fees Awards Act "consistently."). Subsequent to *Buckhannon,* numerous circuits have concluded that the *Buckhannon* "prevailing party" standard applies to requests for attorneys' fees under the IDEA. *See Doe v. Boston Public Schools,* 358 F.3d 20, 26 (1st Cir. 2004) (under *Buckhannon,* "IDEA plaintiffs who achieve their desired result via private settlement may not, in the absence of judicial imprimatur, be considered 'prevailing parties' "); *T.D. v. LaGrange School District No. 102,* 349 F.3d 469, 482 (7th Cir.2003) ("lacking the judicial imprimatur to elevate [plaintiff] to status of prevailing party" *Buckhannon* precludes award of fees under IDEA for parties who settle civil action); *G v. Fort Bragg Dependent Schools,* 343 F.3d 295, 310 (4th Cir. 2003) (*Buckhannon* applicable to IDEA); *John T. v. Delaware County Intermediate Unit,* 318 F.3d 545, 558 (3d Cir.2003) (*Buckhannon* applicable to IDEA); *J.C. v. Regional School District 10, Board of Education,* 278 F.3d 119, 125 (2d Cir.2002) (*Buckhannon* precludes fee award under IDEA if parties settled during administrative proceedings).

In addition, several other members of this Court have concluded that *Buckhannon* precludes a fee award under the IDEA to plaintiffs who settle their claims during the administrative process. *See Adams v. District of Columbia,* 231 F.Supp.2d 52, 55–56 (D.D.C.2002) (Leon, J.) (*Buckhannon* precludes fee award under IDEA if parties settled during administrative proceedings); *Alegria v. District of Columbia,* Civil Action No. 00–2582, 2002 U.S. Dist. LEXIS 16898, at *6 (D.D.C. Sept. 9, 2002) (Kessler, J.) (same); *Heintz v. District of Columbia,* Civil Action No. 01–1124(CKK), Memorandum Opinion at 8 (D.D.C. April 26, 2002) (Kollar–Kotelly, J.) (same). *But see Johnson*

*v. District of Columbia*, 190 F.Supp.2d 34, 44 (D.D.C.2002) ("*Buckhannon* does not preclude an award of fees to plaintiffs who settle IDEA claims during either administrative or judicial proceedings.") (Sullivan, J.). This Court concludes that *Buckhannon* is applicable to the IDEA and precludes a fee award to those parties who settled their claims against DCPS during the course of administrative proceedings and do not obtain a subsequent court order enforcing the settlement agreement.[3]

Plaintiffs argue that despite this conclusion, there are three grounds on which defendants are foreclosed from raising *Buckhannon* as a defense to payment in the instant matter: (1) defendants cannot challenge plaintiffs' "prevailing party" status because defendants already have paid a portion of plaintiffs' fees; (2) *Buckhannon* should not be applied retroactively; and (3) defendants are equitably estopped from challenging payment in light of the Perelman Memorandum, which constituted a formal, written policy on the issue of attorneys' fee reimbursements for cases resulting in settlement agreements. The Court concludes that none of plaintiffs' arguments withstands scrutiny.

First, prior payments cannot have the legal effect of conferring a statutory right to receive fees if one does not exist. Only Congress has the capacity to establish such a right. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. at 602, 121 S.Ct. 1835 ("[W]e follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.' ") (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819, 114 S.Ct. 1960,

128 L.Ed.2d 797 (1994)). Second, retroactive application of *Buckhannon* to plaintiffs' fee petitions is not improper. As Judge Kollar–Kotelly concluded, fee awards for pre-*Buckhannon* settlements of IDEA claims at the administrative stage may be precluded by the decision because *Buckhannon* " 'is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open . . . whether such events predate or postdate our announcement of the rule.' " *Heintz v. District of Columbia*, Civil Action No. 01–1124(CKK), Memorandum Opinion at 11 (quoting *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)). *See also Adams v. District of Columbia*, 231 F.Supp.2d at 56 n. 3; *J.S. v. Ramapo Central School District*, 165 F.Supp.2d 570, 576 (S.D.N.Y. 2001).

Third, plaintiffs' estoppel argument based on the Perelman Memorandum is unconvincing. While the doctrine of equitable estoppel is applicable to government agencies, the court of appeals has directed that such application "must be rigid and sparing." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C.Cir.1988). Furthermore, a case for estoppel against the government must be "compelling" and must include "proof of each of the traditional elements of the doctrine—false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party, and reliance, as well as . . . a showing of an injustice . . . and lack of undue damage to the public interest." *Id.* (internal quotation omitted) (ellipses in original). With the exception of two, all of the settlements at issue here were entered into

---

3. The undersigned also joins the concern expressed by other members of the Court that *Buckhannon 's* preclusion of fees in these circumstances "will have potentially deleterious effect on the ability of parents to challenge the District's IEP determinations and may lead

parties to forego settlement at the administrative level." *Heintz v. District of Columbia,* Civil Action No. 01–1124(CKK), Memorandum Opinion at 8. *See also Alegria v. District of Columbia,* 2002 U.S. Dist. LEXIS 16898, at *5 n. 1.

prior to the date of the Perelman Memorandum, August 29, 2001. *See* Complaint, Ex. 3, "DCPS Payments Record 1998–2001" ("Payment Record"). Plaintiffs therefore cannot show reliance on any position announced in the memorandum with respect to the pre-memorandum settlement agreements and their estoppel argument therefore must fail.[4]

Based on the foregoing analysis, the Court concludes that with the exception of

the two post-Perelman Memorandum settlements, *see supra* at 15 n. 4, *Buckhannon* precludes an award of attorneys' fees to those plaintiffs who entered into settlement agreements during the administrative process because those plaintiffs are not "prevailing parties" under Section 1415(i)(3)(B) of the IDEA. The Court therefore will grant defendants' motion to dismiss and will deny plaintiffs' motion for summary judgment with respect to those claims.[5]

4. The two post-memorandum settlements are different creatures, however. The agreements expressly provide that "the parent is the prevailing party and that counsel for the parent is entitled to attorneys' fees as applicable under the law in full settlement of all claims for fees and costs." *See* Byron Armstrong, Claim re. Settlement of Sept. 4, 2001 (*see* Compl., Ex. 1–4); Dhevan Huggins, Claim re. Settlement of Aug. 30, 2001 (*see* Compl., Ex. 1–36). Defendants agreed to pay plaintiffs' fees, and they cannot shirk their responsibility to perform under the contracts. The agreements were entered into after the Perelman Memorandum was issued, which expressly stated that "DCPS will not pay attorneys' fees incurred in the course of executing a settlement agreement with an attorney representing a parent alleging a violation of the IDEA *unless the payment of these fees is a negotiated term of the settlement agreement in question.*" Perelman Memorandum (emphasis added). The Court therefore concludes that these two fee petitions cannot be dismissed under *Buckhannon.* Whether these claims survive defendants' alternative argument is discussed in Section II(C), *infra.*

5. Specifically, the Court dismisses the following claims: Byron Armstrong, Claim re. Settlement of Jan. 25, 2001 (*see* Compl., Ex. 1–6); Crystal Barnes, Claim re. Settlement of July 21, 1999 (*see* Compl., Ex. 1–8); Stephen Barnes, Claim re. Settlement of July 19, 1999 (*see* Compl., Ex. 1–8); Setta Brown, Claim re. Settlement of July 26, 1999 (*see* Compl., Ex. 1–10); Corene Bryant, Claim re. Settlement of Aug. 5, 1999 (*see* Compl., Ex. 1–11); Kendall Burr, Claim re. Settlement of Dec. 7, 1999 (*see* Compl., Ex. 1–13); Philip Capers, Claim re. Settlement of Feb. 9, 1998 (*see* Compl., Ex. 1–15); Philip Capers, Claim re. Settlement of Nov. 24, 1998 (*see* Compl.,

Ex. 1–16); Brent Chance, Claim re. Settlement of July 7, 1999 (*see* Compl., Ex. 1–17); Tamika Clark, Claim re. Settlement of Aug. 27, 1999 (*see* Compl., Ex. 1–18); Paul Cohen, Claim re. Settlement of Jan. 28, 2001 (*see* Compl., Ex. 1–19); Dominique Cooper, Claim re. Settlement of Sept. 23, 1999 (*see* Compl., Ex. 1–20); Jameka Cozart, Claim re. Settlement of June 17, 1999 (*see* Compl., Ex. 1–22); Carson Friddle, Claim re. Settlement of May 3, 2002 (*see* Compl., Ex. 1–24); Antonio Gibbons, Claim re. Settlement of Jan. 20, 1999 (*see* Compl., Ex. 1–26); Rachel Glickman, Claim re. Settlement of June 23, 2000 (*see* Compl., Ex. 1–29); DeSean Greenwood, Claim re. Settlement of July 30, 1999 (*see* Compl., Ex. 1–32); Antoine Harris, Claim re. Settlement of July 30, 1999 (*see* Compl., Ex. 1–34); Donnell Harris, Claim re. Settlement of Sept. 22, 1999 (*see* Compl., Ex. 1–35); Lakesha Jenkins, Claim re. Settlement of Oct. 27, 2000 (*see* Compl., Ex. 1–37); Andre Jones, Claim re. Settlement of Jan. 20, 1999 (*see* Compl., Ex. 1–38); Derran Joyner, Claim re. Settlement of Sept. 27, 1999 (*see* Compl., Ex. 1–42); Terrell Joyner, Claim re. Settlement of July 15, 1999 (*see* Compl., Ex. 1–44); Joe Lewis, Claim re. Settlement of April 21, 1999 (*see* Compl., Ex. 1–51); Patrick Lynch, Claim re. Settlement of Dec. 10, 1998 (*see* Compl., Ex. 1–52); Jonikia Marshall, Claim re. Settlement of July 29, 1999 (*see* Compl., Ex. 1–53); Diante McLeod, Claim re. Settlement of Dec. 13, 1999 (*see* Compl., Ex. 1–56); Vincent Moore, Claim re. Settlement of Sept. 6, 2000 (*see* Compl., Ex. 1–61); Donte Moses, Claim re. Settlement of July 30, 1999 (*see* Compl., Ex. 1–62); Georgia Rice, Claim re. Settlement of Aug. 7, 2000 (*see* Compl., Ex. 1–68); Veronica Rush, Claim re. Settlement of July 29, 2000 (*see* Compl., Ex. 1–70); Janelle Shaw, Claim re. Settlement of Aug. 26, 1999 (*see* Compl., Ex. 1–73); Benjamin Sierra,

### C. *Impact of the Statutory Fee Cap*

■  Defendants argue that plaintiffs' 43 remaining fee petitions, which stem from counsel's efforts that resulted in favorable HOD's for plaintiffs, must be dismissed as a matter of law because the District of Columbia Appropriations Act of 2002 closed any window through which the outstanding balances plaintiffs are claiming may have been sought. Before examining this argument, a more detailed background on the history of the Appropriations Act caps may be helpful.

Responding to concerns regarding the growing percentage of DCPS's budget that was used to pay attorneys' fee awards under the IDEA, the House Committee on Appropriations, in considering the District of Columbia's fiscal year 1999 appropriations request, adopted an appropriations rider that limited defendants' fee payments under the IDEA. The cap was enacted by both the House and the Senate and became law when the President signed the D.C. Appropriations bill. *See Calloway v. District of Columbia*, 216 F.3d 1, 4 (D.C.Cir.2000) (citing Section 130 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. 102–277, 112 Stat. 2681 (1998) ("Section 130 (1999)")). Specifically, Section 130 (1999) provided, *inter alia*, that:

> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party in an action or an attorney who defends an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) if (1) the hourly rate of compensation of the attorney exceeds the hourly rate of compensation [of $50.00] under section 11–2604(a), District of Columbia Code; or (2)[t]he maximum amount of compensation of the attorney exceeds [$1300.00,]the maximum amount of compensation under section 11–2604(b)(1), District of Columbia Code, except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11–2604(c), District of Columbia Code.

Section 130 (1999). Congress included similar riders in the appropriation bills for 2000, 2001, 2003 and 2004. *See* Section 129 of the District of Columbia Appropriations Act of 2000, Pub.L. No. 106–113, 113 Stat. 1501, 1517 (1999); Section 122 of the District of Columbia Appropriations Act of 2001, Pub.L. No. 106–522, 114 Stat. 2440, 2464 (2000); Section 144 of the District of Columbia Appropriations Act, 2003, Pub.L. No. 108–7, 117 Stat. 11 (2003); and Section 432 of the Consolidated Appropriations Act, 2004, Pub.L. No. 108–199, 118 Stat. 3 (2004) ("Section 432 (2004)").

In 2002, however, Congress declined to attach a fee cap rider. Instead, the appropriations legislation provided:

> Notwithstanding 20 U.S.C. 1415, 42 U.S.C.1988, 29 U.S.C. 794a, or any other

Claim re. Settlement of Sept. 7, 1999 (*see* Compl., Ex. 1–75); Khai Stevens, Claim re. Settlement of Aug. 23, 2000 (*see* Compl., Ex. 1–76); Cedric Streeter, Claim re. Settlement of Nov. 15, 2000 (*see* Compl., Ex. 1–78); Deandre Tolson, Claim re. Settlement of June 22, 1999 (*see* Compl., Ex. 1–80); Derrick Walker, Claim re. Settlement of July 29, 1999 (*see* Compl., Ex. 1–81); Chawntavia Watkins, Claim re. Settlement of Jan. 30, 1999 (*see* Compl., Ex. 1–84); David Williams,

Claim re. Settlement of Sept. 9, 1999 (*see* Compl., Ex. 1–86); Jonathan Williams, Claim re. Settlement of July 7, 1999 (*see* Compl., Ex. 1–87); Tanisha Williams, Claim re. Settlement of Jan. 29, 1999 (*see* Compl., Ex. 1–89); Derrick Woodfork, Claim re. Settlement of June 4, 1999 (*see* Compl., Ex. 1–90); John Wright, Claim re. Settlement of Aug. 26, 1999 (*see* Compl., Ex. 1–92); and William Wright, Claim re. Settlement of Aug. 26, 1999 (*see* Compl., Ex. 1–94).

law, none of the funds appropriated under this Act, or in appropriations Acts for subsequent fiscal years, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 *et seq.*).

Section 140(a) of the District of Columbia Appropriations Act of 2002, Pub.L. No. 107–96, 115 Stat. 923 (2001) ("Section 140 (2002)"). It is under this provision that plaintiffs filed suit seeking additional payments pursuant to their prior fee requests.

While the 2002 Act did not include a statutory cap, Section 140 (2002) did include express language prohibiting the payment of "attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed." Section 140 (2002). Section 140 (2002) also precluded use of future appropriations to pay for such claims: "none of the funds appropriated under this Act, *or in appropriations Acts for subsequent fiscal years*, may be made available to pay attorneys' fees accrued prior to the effective date of this Act." *Id.* (emphasis added).

Plaintiffs concede that a statutory cap did apply to each fee petition at issue here and that defendants paid each claim up to the statutory maximum permitted by the cap. *See* PSMF ¶ 4 (in each of plaintiffs'

claims, "which occurred following the commencement of the 1999 Fiscal Year, Plaintiffs were awarded attorneys's fees based upon the District of Columbia Appropriations Bill which placed hourly limitations on attorneys' fee rates, as well as a per case cap"). Plaintiffs also do not and cannot effectively challenge the validity of the caps in IDEA cases in view of both this Court's and the court of appeals' decisions in the *Calloway* case. *See Calloway v. District of Columbia*, 216 F.3d at 9; *Calloway v. District of Columbia*, 216 F.3d 1 (D.D.C.1999). Under *Calloway*, as even defendants concede, the Court can award but the District of Columbia cannot pay an amount over the cap in any given year. *See* Defs.' Dism. Mem. at 3–4. Defendants argue however, that in light of the plain language of the prospective provision of Section 140 (2002), defendants cannot pay—and will never be required to pay—more than they already have paid with respect to these claims absent another change in the statute.[6] The Court has no choice but to agree, because that is precisely what Section 140 says.

The legislative history of the 2002 Act supports this interpretation. In her comments on the proposed legislation, the principal sponsor of the prospective legislative limitation, Senator Kay Bailey Hutchison, expressly stated that the intent of the provision was to "prevent an estimated $32 million in retroactive attorney's fees from being awarded as threatened by the D.C. Circuit Court. That court has ruled that should the cap be lifted, they will go back and actually undo the will of Congress by awarding all the billed attorney fees in excess of the caps during the last three years." 147 CONG. REC. S11515 (daily ed. Nov. 7, 2001) (statement

---

**6.** This group includes the two fee petitions that survived defendants' *Buckhannon* argu-

ment discussed in Note 5, *supra.*

of Sen. Hutchison). From this statement it is clear that the intent behind this provision was to preclude plaintiffs from receiving payment for fees beyond the statutory caps already applied to their claims from subsequent years' appropriations. In light of the foregoing, plaintiffs' remaining claims must be dismissed as well.[7]

## III. CONCLUSION

The Court has concluded that the limitations period for attorneys' fee actions brought pursuant to Section 1415(i)(3) of the IDEA is three years. The Court therefore denies defendants' motion to dismiss on the ground of untimeliness. Under *Buckhannon*, however, those plaintiffs who settled their claims at the administrative level are not prevailing parties under the IDEA, and the Court therefore grants defendants' motion to dismiss for failure to state a claim with respect to those claims, with the exception of two claims. The Court further concludes that with respect to the remaining claims, which include those two claims excepted from dismissal under the *Buckhannon* analysis and those petitions that stem from plaintiffs' successful HOD's, defendants cannot pay more than they previously have paid in view of the restrictions of Section 140 of the D.C. Appropriations Act of 2002. The Court therefore will grant defendants' motion to dismiss and will deny plaintiffs' motion for summary judgment. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

## *ORDER*

For the reasons stated in a separate Opinion issued this same day, it is hereby

ORDERED that Defendants' Motion to Dismiss [12–1] is GRANTED; it is

FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [10–1] is DENIED; it is

FURTHER ORDERED that Plaintiffs' Motion for a Hearing [27–1] is DENIED as moot; and it is

FURTHER ORDERED that this case is DISMISSED and that the Clerk of the Court shall remove this case from the docket of the Court. This is a final appealable order. *See* FED. R. APP. P. 4(a).

SO ORDERED.

---

7. As is explained in the Opinion issued this same day in *Watkins v. Vance*, Civil Action No. 98–3081(PLF), the limitation in Section 140 applies only to fees sought with respect to administrative proceedings or civil litigation brought under the IDEA and not to fees

sought with respect to lawsuits brought under Section 1983 of the Civil Rights Act to enforce rights under the IDEA. *See Watkins v. Vance*, 328 F.Supp.2d 27, 36, 2004 WL 1763922, Opinion at 12 (D.D.C.2004).