# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 14, 2006        Decided May 5, 2006

No. 05-7001

JAMEL WHATLEY
AND ESTHER WILLIAMS,
GUARDIAN AND NEXT FRIEND OF MINOR
JAMEL WHATLEY,
APPELLANTS

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02961)

*Diana M. Savit* argued the cause and filed the briefs for appellants.

*William J. Earl*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Jamel Whatley and his grandmother and guardian, Esther Williams, appeal the District Court's denial of their motion for attorneys' fees in excess of the limits or "caps" imposed by Congress for actions against the District of Columbia ("District") under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (2000) ("IDEA"). In the District's appropriations acts of 1999, 2000, and 2001, Congress capped attorneys' fees the District could pay parties who prevailed against it in judicial and administrative IDEA actions. In § 140 of the D.C. Appropriations Act of 2002 ("§ 140"), Congress extended the application of those caps indefinitely, mandating that no subsequent appropriations act may fund attorneys' fees above the caps for actions brought or work completed during the previously capped fiscal years.

Appellants argue that despite its plain language, § 140 did not amend IDEA, because it was included in an appropriations act. In addition, even if Congress intended to suspend the courts' ability to award such fees indefinitely, appellants contend that § 140 should be construed narrowly so as to avoid potential constitutional infirmities. According to appellants, if § 140 is read to extend beyond fiscal year 2002 ("FY 2002"), it would unconstitutionally bind future Congresses and violate the separation of powers doctrine by encroaching on the exclusive domain of the judiciary.

The District Court disagreed with appellants, finding that § 140 unambiguously amended IDEA and that no serious constitutional issues were at stake. *See Whatley v. District of Columbia*, 328 F. Supp. 2d 15, 19-20 (D.D.C. 2004); *Armstrong v. Vance*, 328 F. Supp. 2d 50, 61 (D.D.C. 2004). In the District

Court's view, § 140 undeniably limited the award of certain attorneys' fees indefinitely for actions under IDEA. We affirm.

The language of § 140 makes it perfectly clear that Congress intended to limit indefinitely the award of above-cap fees for work performed on actions brought under IDEA from 1999 to 2001. Although there is "'a very strong presumption'" that appropriations acts do not substantively change existing law, *see Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000) (quoting *Bldg. & Constr. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269, 273 (D.C. Cir. 1992)), that presumption may be overcome, as it has been here. We also find, in agreement with the District Court, that § 140 raises no constitutional issues.

## I. BACKGROUND

### A. *Congressional Fee Caps*

In 1998, Congress expressed its dismay over the "growth in legal expenses and litigation associated with special education in the District of Columbia." H.R. REP. NO. 105-670, at 50 (1998). Due to the proliferation of suits brought against the District under IDEA, Congress believed that the District's sizeable annual legal bills began "usurping . . . resources from education to pay attorney fees." *Id.* In an effort to address this issue, the House Committee on Appropriations added a rider to the D.C. Appropriations Act of 1999 ("§ 130") which was intended to limit the District's ability to pay opposing parties' attorneys' fees for the 1999 fiscal year ("FY 1999"). This rider stated:

> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party who prevails in an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) if –

(1) the hourly rate of compensation of the attorney exceeds [$50]; or

(2) the maximum amount of compensation of the attorney exceeds [$1,300], except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11-2604(c), District of Columbia Code.

Section 130 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681, 2681-138-39 (1998). This rider was enacted by Congress in 1998. Congress enacted similar provisions in 1999 and 2000 for the fiscal years of 2000 and 2001, respectively. *See* Section 129 of the District of Columbia Appropriations Act of 2000, Pub. L. No. 106-113, 113 Stat. 1501, 1517 (1999); Section 122 of the District of Columbia Appropriations Act of 2001, Pub. L. No. 106-522, 114 Stat. 2440, 2464 (2000).

In early 1999, a group of disabled students and their parents challenged § 130's cap on attorneys' fees. They argued that § 130 violated the Due Process Clause of the Fifth Amendment and that it was preempted by IDEA. They also sought a declaratory ruling that § 130 limited only the District's ability to *pay* attorneys' fees, not the courts' authority to *award* them. In *Calloway v. District of Columbia*, this court rejected the group's constitutional and preemption claims, but agreed that § 130 "limits only District authority to pay fees from FY 1999 appropriations, not court authority to award fees under IDEA." 216 F.3d at 9. In so finding, the court noted that there is a "'very strong presumption' that appropriations acts do not amend substantive law," and that § 130 did not "unambiguously express[] an intent to limit court authority to award fees under IDEA." *Id.*

In direct response to *Calloway*, Congress sought to fortify its fee-cap regime in the D.C. Appropriations Act of 2002 ("2002 Appropriations Act"). Rather than simply incorporating another fee cap, Congress mandated:

> Notwithstanding 20 U.S.C. 1415, 42 U.S.C. 1988, 29 U.S.C. 794a, or any other law, none of the funds appropriated under this Act, or in appropriations Acts for subsequent fiscal years, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.).

Section 140(a) of the District of Columbia Appropriations Act of 2002, Pub. L. No. 107-96, 115 Stat. 923, 958 (2001) ("Section 140(a)"). Congress subsequently returned to its pre-2002 fee-cap framework in the District's appropriations acts of 2003, 2004, and 2005. *See* Section 144 of the Consolidated Appropriations Resolution of 2003, Pub. L. No. 108-7, 117 Stat. 11, 131-32 (2003); Section 432 of the Consolidated Appropriations Act of 2004, Pub. L. No. 108-199, 118 Stat. 3, 141 (2004); Section 327 of the District of Columbia Appropriations Act of 2005, Pub. L. No. 108-335, 118 Stat. 1322, 1344 (2004).

### B. *Jamel Whatley & the District of Columbia Public Schools*

In 1995, Esther Williams became increasingly concerned about her grandson Jamel's lack of progress at school. He was in the process of repeating first grade, although the D.C. Public Schools ("DCPS") had not undertaken a formal evaluation of his academic development. On February 15, 1996, Williams filed

a "Form 6," which triggers DCPS's evaluation and possible placement of students that may have special academic needs. DCPS thereafter began an assessment of Jamel that lasted approximately two years. As a result of this delay, on February 18, 1998, Williams requested that the DCPS Student Hearing Office conduct a due process hearing in accordance with IDEA. *See* 20 U.S.C. § 1415(f).

DCPS failed to act on Williams' hearing request. On December 4, 1998, Williams filed an action on Jamel's behalf in the District Court. She sought an order directing a due process hearing on DCPS's alleged failure to provide special education services to Jamel. By this time, Jamel was 10 years old and in the process of repeating third grade.

Not long after Williams filed suit, DCPS completed its original assessment and developed an Individualized Education Program ("IEP") for Jamel. The IEP identified Jamel as both learning disabled and speech/language impaired. DCPS proposed that Jamel enter the Prospect-Goding Learning Center ("Prospect"). He enrolled at Prospect in March 1999, where he was placed in a full-time special education class and received counseling and speech/language therapy.

Jamel's due process hearing was finally held on October 27, 1999. On November 2, 1999, the hearing officer concluded that DCPS demonstrated that the program at Prospect implemented Jamel's IEP and conformed with the requirements of IDEA. However, she also found that DCPS's "delay in determining eligibility and initiating services [wa]s extensive," and that the "impact [of the delay on Jamel wa]s significant, particularly [since he] entered special education at the highest intensity level short of residential placement." Hearing Officer's Determination (Oct. 27, 1999) at 6, Joint Appendix ("J.A.") 69. To remedy the damage caused by the District, the hearing officer ruled that Jamel was entitled to compensatory relief. This relief included a reading diagnostic evaluation, tutoring in

reading, language arts, and math, and new evaluations after the end of the 1999-2000 school year and prior to the 2001-02 school year.

Based on their success in the administrative proceeding, appellants sought from the District attorneys' fees and costs. IDEA authorizes federal district courts to award such fees and costs to a "prevailing party" in any action or proceeding brought under the Act. 20 U.S.C. § 1415(i)(3)(B). The District complied with appellants' fee request, paying all of their expenses (which were not subject to the cap) and as much of the fees as were permitted by § 130.

Despite the apparent resolution of appellants' complaints, Williams believed that DCPS was not fully complying with the hearing officer's determination and that Jamel was making little academic progress at Prospect. Thus, on April 4, 2001, she requested a second due process hearing. This action was rendered moot, however, as the parties reached a settlement on May 8, 2001. DCPS agreed, *inter alia*, to pay for the independent testing already completed, send out new placement packets on Jamel's behalf, and set up an expedited hearing process should the terms of the agreement be violated. The District again paid all expenses associated with appellants' administrative action and as much of the attorneys' fees as permitted under the applicable appropriations cap.

## C. *District Court Proceedings*

On November 27, 2002, appellants filed a motion seeking above-cap fees allegedly owed for work done in conjunction with the two administrative proceedings. Specifically, they requested $12,590.36 for work done on the two administrative actions, and $11,687.50 in fees and $90.86 in expenses for preparing the motion filed with the District Court and for other "recent" administrative work for Jamel. Appellants asserted that they are entitled to recover these above-cap fees, because

construing § 140 to apply indefinitely would be unconstitutional. Appellants claimed, in particular, that by binding Congress in perpetuity, § 140 would violate Congress's future right to amend a statute. Appellants also argued that § 140 raises separation of powers concerns, because (1) by effectively removing from the courts discretion to award reasonable attorneys' fees under IDEA, Congress would be encroaching on the judiciary's exclusive domain; and (2) if the court reads § 140 as indefinitely precluding the District's payment of fees, the result would improperly nullify this court's decision in *Calloway*, which, in appellants' view, held that IDEA plaintiffs would be entitled to above-cap fees if and when the caps expired. Finally, appellants claimed that § 140 would also violate the takings clause of the Fifth Amendment.

The District Court found no merit in appellants' claims. Citing *Calloway*, the District Court maintained that, although there is a "presumption . . . that appropriation statutes generally do not amend substantive law, it is only a presumption." *Whatley*, 328 F. Supp. 2d at 19. The District Court held that Congress overcame that presumption with the plain language and unequivocal legislative history of § 140. *Id.*; *see also Armstrong*, 328 F. Supp. 2d at 61 (stating that "in light of the plain language of the prospective provision of Section 140 (2002), defendants cannot pay – and will never be required to pay – [above-cap fees]").

The District Court also rejected appellants' separation of powers arguments. The court found that Congress "'did not use [the fee cap] to limit the power of federal courts to award fees under IDEA'. . . . It only limited defendants' ability to pay them." *Whatley*, 328 F. Supp. 2d at 19 (quoting *Calloway*, 216 F.3d at 12) (alteration in *Whatley*). Addressing appellants' claim that Congress in effect unlawfully nullified *Calloway*, the District Court found that, "[w]hile the decision in *Calloway* does not prohibit parties from seeking future payments of past fees,

it by no means *requires* payment if the cap is lifted." *Id.* at 20 (emphasis added). The District Court noted that the issue of "whether plaintiffs have a right to obtain past fee amounts from subsequent years' appropriations . . . was expressly left open in *Calloway*." *Id.*

The District Court additionally rejected appellants' takings claim, holding that § 140 "permanently caps the amount of fees counsel may collect for pre-2002 Appropriations Act efforts, but it does not rise to the level of a taking." *Id.* The trial court found that, even when taken in conjunction with the "temporary" nature of the annual fee caps imposed in 1999-2001, *Calloway* "is not sufficient to create a property interest in the excess fees." *Id.*

Finally, the District Court held that, even if their constitutional claims were viable, appellants were not entitled to "any fees sought for their efforts in connection with the second due process hearing request and the attendant settlement agreement because they were not 'prevailing parties' under the IDEA in light of the Supreme Court's decision in *Buckhannon* [*Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001)]." *Id.* at 18. The court determined that appellants could not be prevailing parties by virtue of their settlement agreement, because they did not "obtain a subsequent court order enforcing the settlement agreement." *Armstrong*, 328 F. Supp. 2d at 58.

Whatley and Williams now appeal the District Court's rejection of their claims.

## II. ANALYSIS

### A. *The Role of § 140 in IDEA*

As the District Court found, there is little doubt that, in enacting § 140, Congress intended to amend IDEA. Appellants' counsel conceded as much during oral argument. *See* Recording

of Oral Argument at 25:45 (agreeing that if § 140 was not a part of an appropriations act, then Congress's "obvious intent would be to amend the IDEA"). The question raised by appellants, then, is whether such an amendment is permitted in an appropriations act. We review this question *de novo*, *see Calloway*, 216 F.3d at 5, and hold that the unequivocal answer here is yes. The normal presumption is that appropriations acts do not amend substantive law, "and that when they do, the change is only intended for one fiscal year." *Martin*, 961 F.2d at 273. However, when an appropriations act contains "language [that] clearly indicates that it is intended to be permanent," its reach extends beyond the fiscal year for which it was originally enacted. *See id.* at 274.

The statutory language of § 140 unmistakably demonstrates Congress's intent to make the 1999-2001 fee caps permanent. Unlike § 130 – the provision at issue in *Calloway* – § 140 mandates that the District is *never* to pay fees for work done or fees requested in the relevant years:

> [N]one of the funds appropriated under this Act, *or in appropriations Acts for subsequent fiscal years*, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts . . . .

Section 140(a), Pub. L. No. 107-96, 115 Stat. 923, 958 (emphasis added). The language chosen by Congress could not be more straightforward.

Appellants argue that we should reject the District's claim that § 140 applies indefinitely, because, before the District Court, the District "conceded" that § 140 was only meant to apply for FY 2002. In appellants' view, the District Court should have ruled in their favor, because the parties did not disagree over the meaning of § 140. We reject this argument, for the District Court certainly was not obliged to adopt an

interpretation of the statute that was patently wrong. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). In this case, the District's initial interpretation of § 140 was simply incorrect, because § 140's limit on fee awards was unquestionably designed to extend beyond FY 2002. Indeed, the District reversed its position on this issue in this court. *See* Br. for Appellee at 15-16, 18-19 ("[T]he district court determined that the proposed interpretation of Section 140 initially submitted by the District was not legally sound and chose not to apply it. That decision was appropriate . . . .").

We find no ambiguity in § 140. In adopting this provision, Congress intended to amend IDEA indefinitely to make it clear that none of the funds appropriated under the 2002 Appropriations Act, or in appropriations acts for subsequent fiscal years, may be used to pay attorneys' fees accrued prior to the effective date of the 2002 Appropriations Act if the fees sought exceed the caps imposed on attorneys' fees by prior appropriations acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against DCPS under IDEA. In short, § 140 means what it says and we are obliged to enforce its terms.

## B.  *Constitutional Challenges to § 140*

Appellants contend that the court should do everything possible to read § 140 more narrowly in order to avoid the allegedly unconstitutional implications of a permanent bar on above-cap fees. They argue that an expansive reading would unlawfully bind future Congresses and would violate separation of powers principles. We review these claims *de novo, see Eldred v. Reno*, 239 F.3d 372, 374 (D.C. Cir. 2001) (stating that

pure questions of law are reviewed *de novo*), and find them unavailing.

First, appellants assert that § 140 "cannot be given effect beyond the year for which it was enacted because it attempts, impermissibly, to bar future Congresses from revisiting the issue of paying the accumulated fees awarded under . . . *Calloway*." Br. for Appellants at 20. In other words, appellants maintain that "a future Congress is free to repeal, modify or otherwise invalidate a prior Congress's legislative act." *Id.* Appellants are correct in this assertion. Their argument fails, however, because nothing contained in the 2002 Appropriations Act prohibits Congress from amending IDEA in the future. Indeed, the lone case appellants cite for support, *Lovett v. United States*, 66 F. Supp. 142 (Ct. Cl. 1945), illustrates this point. Similar to the case at bar, the provision at issue in *Lovett* was "statutory, not a part of the Constitution," and therefore it "may or may not turn out to be permanent legislation." 66 F. Supp. at 147. Thus, while § 140 bars payment in "subsequent fiscal years," Congress may, as it sees fit, change course and amend this directive.

We also find no merit in appellants' argument that § 140 violates separation of powers principles by "impermissibly interfer[ing] with the judiciary's prerogative to regulate the bar and attorney-client relationships." Br. for Appellants at 16. The "judiciary's prerogative[s]" do not allow the courts to disregard congressional enactments setting the parameters for the award of attorneys' fees. As we noted in *Calloway*, Congress undoubtedly may "limit the power of federal courts to award fees under IDEA." 216 F.3d at 12. In this case, the contested fees are plainly authorized by statute, *see* 20 U.S.C. § 1415(i)(3)(B), so the courts may award fees under the statute only as directed by Congress.

Two arguments raised by appellants before the District Court elude consideration here. First, since we find that § 140 bars the award – beyond that which plaintiffs have already

obtained – of fees for work done and fees sought during the fiscal years of 1999, 2000, and 2001, we decline to reach the issue of whether appellants were "prevailing parties" within the meaning of IDEA as a result of the settlement reached in the second administrative action. Appellants are not entitled to additional fees under the statute, so therefore their prevailing party status is currently of no moment. Second, we need not consider whether § 140 amounts to a taking, because appellants failed to raise the issue on appeal. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived.").

### III.   CONCLUSION

The judgment of the District Court is hereby affirmed for the reasons given above.

*So ordered*.