# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 17, 2015                Decided June 26, 2015

No. 14-7133

ANGELA PRICE, PARENT AND NEXT FRIEND OF J.P., A MINOR,
APPELLANT

JEROME PARKER,
APPELLANT

LASHAWN WEEMS, PARENT AND NEXT FRIEND OF D.W.,
A MINOR,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Consolidated with 14-7138

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cv-01069)

———

*Adina H. Rosenbaum* argued the cause for appellants.
With her on the briefs were *Jehan A. Patterson*, *Allison M.
Zieve*, and *Charles A. Moran.*

*Michael T. Kirkpatrick* was on the brief for *amicus curiae* Council of Parent Attorneys and Advocates, Inc. in support of appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: BROWN, KAVANAUGH and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring opinion filed by *Circuit Judge* BROWN.

WILKINS, *Circuit Judge*: Appellants in this case successfully pursued administrative proceedings against the District of Columbia Public Schools ("DCPS") to vindicate rights to a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA"). They obtained representation with help from the Juvenile Branch of the Superior Court of the District of Columbia, which appointed an experienced member of that court's Special Education Advocate Panel as counsel. Under the Superior Court orders making the appointments, the D.C. Courts promised to pay the attorney at the statutory rate in the D.C. Criminal Justice Act—$90 per hour—if he was not otherwise compensated by DCPS. After prevailing in their administrative proceedings, Appellants sought from DCPS payment for attorney fees under the IDEA's fee-shifting provision at the rate of $250 per hour. But DCPS refused to pay more than the $90 per hour rate that the D.C. Courts would pay if fee shifting was denied.

Appellants challenged the DCPS fee decision by bringing this lawsuit, pointing to their IDEA entitlement to fee shifting at "prevailing" market rates. The District Court rejected the claim to more than $90 per hour and held that the promise of payment in the court appointments foreclosed any greater recovery. We agree with Appellants that nothing in the orders appointing counsel can preempt IDEA fee shifting. We further agree that the fallback compensation offered by the D.C. Courts is not a proper factor in determining the hourly rate for statutory fee shifting. We therefore reverse.

**I.**

The IDEA guarantees that children with disabilities will have the opportunity to receive a free appropriate public education. *See* 20 U.S.C. § 1400(d). To protect this right, Congress enacted a fee-shifting provision entitling a "prevailing party" under the Act to "reasonable attorneys' fees." Pub. L. No. 99-372, 100 Stat. 796 (1986) (codified as amended at 20 U.S.C. § 1415(i)(3)(B)).

There is no dispute that Appellants were prevailing parties in IDEA actions against DCPS. Their attorney, Pierre Bergeron, was in each instance appointed incident to juvenile delinquency proceedings in the D.C. Superior Court.[1] The

---

[1] Although there are three Appellants in this case, there were only two underlying IDEA administrative proceedings. The first dates to February 22, 2010, when the Superior Court appointed Mr. Bergeron to represent Angela Price as next friend of her minor son, Jerome Parker. Mr. Parker turned eighteen during the pendency of the administrative proceeding and so the Superior Court also appointed Mr. Bergeron to represent him directly. The second IDEA proceeding dates to September 30, 2010, when the Superior Court appointed Mr. Bergeron to represent Lashawn Weems as next friend of her minor child.

court appointment orders for Appellant Price and Appellant Parker each stated that "the District of Columbia Courts will compensate the Educational Attorney pursuant to the Criminal Justice Act if he is not compensated by the District of Columbia Public Schools." Although the appointment order for Appellant Weems did not contain a similar express statement, the parties assume—as do we—that the same term attached.

Following success on the merits in administrative proceedings before DCPS, Appellants sought reimbursement for their attorney fees at $250 per hour. DCPS refused to pay more than $90 per hour, which is the statutory rate at which attorneys are paid by the D.C. Courts under the D.C. Criminal Justice Act. *See* D.C. Code § 11-2604(a). To challenge that refusal, Appellants brought this suit in District Court under 20 U.S.C. § 1415(i)(2) seeking reimbursement at what they contend is the applicable market-based *Laffey* rate of $505 per hour. *See generally Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995) (explaining U.S. Attorney's Office updates to *Laffey* matrix, derived from *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)). Appellants contend in this fee suit that the $250 rate at which pre-litigation reimbursement was sought merely represented an offer to settle.

The District Court granted summary judgment in favor of DCPS, denying Appellants any recovery beyond the $90 per hour they already had received from DCPS. *See Price v. District of Columbia*, 61 F. Supp. 3d 135 (D.D.C. 2014). Appellants timely noticed this appeal.

5

## II.

We review for abuse of discretion a district court's decision regarding the amount of attorney fees to award. *Covington*, 57 F.3d at 1110. An abuse of discretion occurs by definition when the district court does not apply the correct legal standard or misapprehends the underlying substantive law, and we examine *de novo* whether the district court applied the correct legal standard. *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012).

The starting point of our analysis on the merits is the text of the IDEA fee-shifting provision, which states that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—(I) to a prevailing party who is the parent of a child with a disability." 20 USC § 1415(i)(3)(B)(i).[2] DCPS suggests that this phrase entails near-plenary discretion that could itself be a basis for affirming the District Court's order. But notwithstanding the apparently permissive language of the statute, the Supreme Court has interpreted similar language in other fee-shifting contexts to mean that the prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400,

---

[2] Although Jerome Parker is a Plaintiff-Appellant in this case, it is uncertain whether he is eligible for fee shifting under the IDEA, which provides for the award of fees "to a prevailing party who is the *parent* of a child with a disability." 20 USC § 1415(i)(3)(B)(i)(I) (emphasis added). "Parent" is defined in the statute and does not expressly include the child himself. *Id.* § 1401(23). But we need not decide this issue because it has not been raised by the parties. In any event, Mr. Parker's mother, Plaintiff-Appellant Angela Price, is a parent eligible for fee shifting based on Mr. Bergeron's work on behalf of Mr. Parker.

402 (1968) (per curiam); *see also Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curiam) (same).[3]

The District Court recognized that Appellants were "prevailing parties." The critical question on appeal is whether its reasoning can be read to have arrived at a $90 fee-shifting rate consistent with the applicable law. The IDEA instructs that fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 USC § 1415(i)(3)(C).

The District Court's opinion suggests that it never reached this determination. It held that "court appointment pursuant to a statute that clearly sets a rate of compensation is the beginning and end of the inquiry." It reasoned that because Mr. Bergeron's appointment was made pursuant to the D.C. Criminal Justice Act, that statute controlled the fee-shifting entitlement and marked the end of the matter.

The D.C. Criminal Justice Act invoked by the Superior Court in making the appointments and authorizing fallback compensation does not preempt fee shifting pursuant to the IDEA. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.") (quoting *Morton v. Mancari*, 417 U.S. 535, 550-551 (1974)) (internal

---

[3] Although both *Newman* and *Lefemine* involved a different fee-shifting statute, where fee-shifting statutes have similar language there is a "strong indication" that they are to be interpreted alike. *Indep. Fed'n. of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989) (quoting *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973)); *see also Alegria v. District of Columbia*, 391 F.3d 262, 264 (D.C. Cir. 2004) (same).

quotation marks omitted). The D.C. Criminal Justice Act requires the Joint Committee on Judicial Administration of the D.C. Courts to implement a plan for furnishing representation to a person "who is a juvenile and alleged to be delinquent or in need of supervision." D.C. Code § 11-2601(5). Citing this law, the D.C. Courts created the Special Education Advocate ("SEA") Panel, from which Mr. Bergeron was appointed. *See* D.C. Courts Admin. Order No. 02-15 (designating SEA Panel); *see also* D.C. Courts Admin. Order No. 12-02 (re-establishing same). The Superior Court's Juvenile Branch made the relevant appointments from that Panel in connection with juvenile delinquency proceedings. Nothing in the D.C. Code, the D.C. Courts' administrative orders, or the Superior Court appointing orders purports to preempt IDEA fee shifting.[4]

DCPS offers an alternative interpretation of the District Court's order, arguing that the District Court correctly viewed the D.C. Criminal Justice Act statutory compensation rate as preclusive of the "prevailing" rate determination under the IDEA. DCPS contends that "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," *Perdue v.*

---

[4] Plaintiffs' attorney in this case has received no compensation from the D.C. Courts, and we need not and do not address the hypothetical case of a plaintiff who seeks IDEA fee shifting from DCPS when his or her attorney already has been paid by the D.C. Courts. Since this case was decided by the District Court, the Superior Court has issued an additional administrative order clarifying that any compensation paid to special education attorneys from CJA funds requires a certification "that the voucher does not include any services for which payment has been made by or requested from DCPS, or that such request has been denied in full by DCPS and such denial has been affirmed by a court of competent jurisdiction." D.C. Courts Admin. Order No. 14-19.

*Kenny A.*, 559 U.S. 542, 552 (2010) (internal quotation marks omitted), and because Mr. Bergeron was willing to accept $90 per hour for his services, any greater compensation would produce an undue windfall.

We disagree for two reasons. First, as a factual matter, the constructive terms of representation that Mr. Bergeron accepted were to receive the benefit of IDEA fee shifting from DCPS if he was successful while retaining a fallback of $90 per hour compensation from the D.C. Courts if his client did not "prevail." That he undertook the representations in this case on those terms does not demonstrate he would have been willing to accept the work on the open market for a fixed rate of $90 per hour. Second, even if Mr. Bergeron accepted these assignments from the Superior Court and would have performed them at a $90 rate because of the public interest nature of the case, his clients remain entitled to fee shifting at the prevailing rate. Our Court has held that the prevailing market rate method applies to "attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) (holding that fee shifting is "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel").[5]

Accordingly, we conclude that the District Court erred as a matter of law in limiting Appellants' recovery to $90 per hour. The $90 per hour statutory compensation rate in the D.C. Criminal Justice Act did not preempt the prevailing-rate

---

[5] We treat *Save Our Cumberland Mountains* and *Blum* as presumptively applicable, even though each involved a different fee-shifting statute. *See supra* note 3.

determination required in IDEA fee shifting, nor is it an appropriate factor to consider in making the prevailing-rate determination because it was offered by the D.C. Courts and accepted by Mr. Bergeron only as a back-up promise of compensation.

## III.

For the foregoing reasons, we reverse the judgment of the District Court and remand the case with instructions to award attorney fees consistent with this opinion and "based on rates prevailing in the community . . . for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), appropriately reduced if such rates "unreasonably exceed[] the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," *id.* § 1415(i)(3)(F)(ii).

*So ordered.*

BROWN, *Circuit Judge*, concurring: I agree with my colleagues that appellants are entitled to "reasonable attorneys' fees . . . based on rates prevailing in the community . . . for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Like them, I would find the "$90 per hour statutory compensation rate in the D.C. Criminal Justice Act . . . is [not] an appropriate factor to consider in making the prevailing-rate determination."[1] Maj. Op. at 8–9. However, the court's opinion fails to note that the *Laffey* Matrix rate of $505 per hour is also an irrelevant benchmark for administrative proceedings before a D.C. Public Schools ("DCPS") hearing officer.

The *Laffey* Matrix, which is updated annually by the United States Attorney's Office, provides a benchmark for

---

[1] As Judge Leon explained in his opinion below, "[b]oth the CJA and the IDEA attorneys' fees provisions are directed to providing competent counsel to individuals who otherwise may not be able to afford it." *Price v. District of Columbia*, 61 F. Supp. 3d 135, 139 (D.D.C. 2014). The court's opinion today holds that, in their current form, the terms of the D.C. CJA and of the D.C. Superior Court's appointment orders do not displace the IDEA's attorneys' fees provision. However, the ruling does not foreclose the possibility that, in the future, plaintiffs who accept representation under the CJA could be required to assign their interest in any award of attorneys' fees—mirroring the common practice of law firms that provide *pro bono* legal services, *see Venegas v. Mitchell*, 495 U.S. 82, 86 (1990).

Such an assignment of interest could help contain the cost of attorneys' fees. Congress has, at times, expressed concern about "the growth of [IDEA] legal expenses . . . and the usurping of resources from education to pay attorney fees," *Calloway v. District of Columbia*, 216 F.3d 1, 4 (D.C. Cir. 2000) (quoting H.R. REP. NO. 105-670, at 50 (1998)), and has even capped the amount of attorneys' fees available to IDEA plaintiffs in the District of Columbia, *see Whatley v. District of Columbia*, 447 F.3d 814 (D.C. Cir. 2006).

reasonable fees in *complex federal litigation. See, e.g.*, *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995) ("[P]laintiffs submitted a great deal of evidence regarding prevailing market rates for complex federal litigation. This included the *Laffey* matrix . . . ."). Appellants are entitled to the *Laffey* rate only if they can establish that the "relevant legal market in this action," namely representation in IDEA administrative due process hearings, "is subject to the same hourly rates that prevail in . . . complex federal litigation." *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 374 (D.D.C. 1983), *rev'd on other* grounds, 746 F.2d 4 (D.C. Cir. 1984); *see also Covington*, 57 F.3d at 1111–1112 (holding that awards of fees in federal civil rights and employment discrimination actions should be governed by the "same standards which prevail in other types of complex federal litigation"). Absent such a finding, *Laffey* Matrix rates are irrelevant to the prevailing-rate determination.

In deciding what constitutes reasonable attorneys' fees, courts have a tendency to err on the side of awarding too much rather than too little. However, inflated fee awards are far from harmless; they produce windfalls to attorneys at the expense of public education. Around the country, school districts resolve special education disputes through mediation, mediated settlements, or other forms of alternative dispute resolution—and therefore, without triggering the IDEA's attorneys' fees provision. DCPS has the dubious honor of adjudicating the most IDEA disputes per student of any state or territory in the country. In fiscal year 2010–2011, there were 229 fully adjudicated due process complaints for every 10,000 students in the District—over seventy-five times the national average. U.S. DEP'T OF EDUC., 35TH ANNUAL REPORT TO CONGRESS ON THE IMPLEMENTATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT 173–175 (2013). These disputes cost DCPS nearly $6 million in

attorneys' fees awards alone. OFFICE OF THE INSPECTOR GENERAL, GOVERNMENT OF THE DISTRICT OF COLUMBIA, AUDIT OF SPECIAL EDUCATION ATTORNEY CERTIFICATIONS 33 (2013).

While the reasons for this unfortunate state of affairs are many and varied, courts provide no relief when they hold out the promise of above-market fee awards to attorneys who bring due process complaints. The IDEA's attorneys' fees provision is meant to encourage compliance with the statute by "enabl[ing prevailing plaintiffs] to employ reasonably competent lawyers without cost to themselves." *Venegas v. Mitchell*, 495 U.S. 82, 86 (1990). In other words, it is a means "to ensur[ing] that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). However, when courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect.