BROWN, Circuit Judge,
concurring:
I agree with my colleagues that appellants are entitled to “reasonable attorneys’ fees ... based on rates prevailing in the community ... for the kind and quality of services furnished.” 20 U.S.C. § 1415(i)(3)(C). Like them, I would find the “$90 per hour statutory compensation rate in the D.C. Criminal Justice Act ... is [not] an appropriate factor to consider in making the prevailing-rate determina *117 tion.”[1] Maj. Op. at 116. However, the court’s opinion fails to note that the Laffey Matrix rate of $505 per hour is also an irrelevant benchmark for administrative proceedings before a D.C. Public Schools (“DCPS”) hearing officer.
The Laffey Matrix, which is updated annually by the United States Attorney’s Office, provides a benchmark for reasonable fees in complex federal litigation. See, e.g., Covington v. District of Columbia, 57 F.3d 1101, 1110 (D.C.Cir.1995) (“[P]laintiffs submitted a great deal of evidence regarding prevailing market rates for complex federal litigation. This included the Laffey matrix....”). Appellants are entitled to the Laffey rate only if they can establish that the “relevant legal market in this action,” namely representation in IDEA administrative due process hearings, “is subject to the same hourly rates that prevail in ... complex federal litigation.” Laffey v. Nw. Airlines, Inc., 572 F.Supp. 354, 374 (D.D.C.1983), rev’d on other grounds, 746 F.2d 4 (D.C.Cir.1984); see also Covington, 57 F.3d at 1111-1112 (holding that awards of fees in federal civil rights and employment discrimination actions should be governed by the “same standards which prevail in other types of complex federal litigation”). Absent such a finding, Laffey Matrix rates are irrelevant to the prevailing-rate determination.
In deciding what constitutes reasonable attorneys’ fees, courts have a tendency to err on the side of awarding too much rather than too little. However, inflated fee awards are far from harmless; they produce windfalls to attorneys at the expense of public education. Around the country, school districts resolve special education disputes through mediation, mediated settlements, or other forms of alternative dispute resolution — and therefore, without triggering the IDEA’S attorneys’ fees provision. DCPS has the dubious honor of adjudicating the most IDEA disputes per student of any state or territory in the country. In fiscal year 2010-2011, there were 229 fully adjudicated due process complaints for every 10,000 students in the District — over seventy-five times the national average. U.S. Dep’t of Eduo., 35th Annual RepoRt to Congeess on the Implementation of the Individuals with Disabilities Eduoation Act 173-175 (2013). These disputes cost DCPS nearly $6 million in attorneys’ fees awards alone. Of-fioe OF THE INSPECTOR GENERAL, GOVERNMENT OF THE DISTRICT OF COLUMBIA, AuDIT OF Special Education Attorney Certifications 33 (2013).
While the reasons for this unfortunate state of affairs are many and varied, courts provide no relief when they hold out the *118 promise of above-market fee awards to attorneys who bring due process complaints. The IDEA’S attorneys’ fees provision is meant to encourage compliance with the statute by “enabling prevailing plaintiffs] to employ reasonably competent lawyers without cost to themselves.” Venegas v. Mitchell, 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). In other words, it is a means “to ensur[ing] that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs.” 20 U.S.C. § 1400(d)(1)(A). However, when courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect.

. As Judge Leon explained in his opinion below, "[b]oth the CJA and the IDEA attorneys' fees provisions are directed to providing competent counsel to individuals who otherwise may not be able to afford it.” Price v. District of Columbia, 61 F.Supp.3d 135, 139 (D.D.C.2014). The court's opinion today holds that, in their current form, the terms of the D.C. CJA and of the D.C. Superior Court’s appointment orders do not displace the IDEA’s attorneys’ fees provision. However, the ruling does not foreclose the possibility that, in the future, plaintiffs who accept representation under the CJA could be required to assign their interest in any .award of attorneys' fees— mirroring the common practice of law firms that provide pro bono legal services, see Venegas v. Mitchell, 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).
Such an assignment of interest could help contain the cost of attorneys' fees. Congress has, at times, expressed concern about "the growth of [IDEA] legal expenses ... and the usurping of resources from education to pay attorney fees," Calloway v. District of Columbia, 216 F.3d 1, 4 (D.C.Cir.2000) (quoting H.R. Rep. No. 105-670, at 50 (1998)), and has even capped the amount of attorneys' fees available to IDEA plaintiffs in the District of Columbia, see Whatley v. District of Columbia, 447 F.3d 814 (D.C.Cir.2006).